# ORIGINAL

## IN THE UNITED STATES
## COURT OF FEDERAL CLAIMS

**FILED**

FEB 2 6 2016

U.S. COURT OF
FEDERAL CLAIMS

AT&T ADVERTISING, L.P.,
YP ADVERTISING & PUBLISHING LLC,
Tax Matters Partner,

              Complainant,

              v.

THE UNITED STATES,

              Defendant.

No. **16-272 T**

**COMPLAINT**

## COMPLAINT FOR READJUSTMENT OF
## PARTNERSHIP ITEMS UNDER CODE SECTION 6226

Complainant hereby petitions, pursuant to Section 6226 of the Internal Revenue Code of

1986 (the "Code"), for a readjustment of the partnership items set forth by the Commissioner of

Internal Revenue (the "Commissioner") in the Notices of Final Partnership Administrative

Adjustment dated November 30, 2015 and December 21, 2015 (the "FPAAs"), and as the basis

for its complaint in the nature of a readjustment respectfully alleges as follows:

### Parties and Jurisdiction

1.      Complainant, YP Advertising & Publishing LLC, is a single-member Delaware

limited liability company. Its principal office and principal place of business are located at 2247

Northlake Parkway, Tucker GA 30084.

2.      AT&T Advertising, L.P. (the "Partnership") was a Delaware limited partnership.

Subsequent to the taxable years in issue, the Partnership merged with and into YP Advertising &

Publishing LLC. Its principal office and principal place of business are located at 2247 Northlake

1

Parkway, Tucker, GA 30084. For the taxable years at issue, the Partnership was located at One

AT&T Center, St. Louis, MO 63101.

3.       The Partnership timely filed its Federal tax returns for the taxable years ended

December 31, 2005 through December 31, 2009 with the IRS Service Center in Ogden, Utah.

4.       The Partnership maintained its books and records and filed its federal tax returns

on the accrual method of accounting.

5.       Complainant is the Tax Matters Partner of the Partnership for the Partnership's

taxable years ending December 31, 2005 through December 31, 2009.

6.       The Partnership had four partners, two general partners and two limited partners,

as follows.

7.       Southwestern Bell Yellow Pages Resources, Inc. ("Resources") was a general

partner of the Partnership with a one-percent profits interest, and was the Tax Matters Partner of

the Partnership.

8.       Southwestern Bell Yellow Pages Services, Inc. ("Services") was a limited partner

of the Partnership with a 37-percent profits interest.

9.       Pacific Bell Directory was a general partner of the Partnership with a one-percent

profits interest.

10.      PBD Services, LLC was a limited partner of the Partnership with a 61-percent

profits interest. In 2009, PBD Services, LLC merged with and into Pacific Bell Directory.

11.      Complainant is the successor-in-interest to Resources, Services, PBD Services,

LLC, and Pacific Bell Directory.

12.     The employer identification number for Complainant and the Partnership are listed in Exhibit A, which is being filed under seal pursuant to RCFC 9(m)(2)(D) and (F), and is the subject of an accompanying Motion to Seal.

13.     The Appeals Office of the Internal Revenue Service, Houston, Texas, issued the FPAAs, which relate to the Partnership's taxable years ending December 31, 2005, December 31, 2006, December 31, 2007, December 31, 2008, and December 31, 2009. Each of the FPAAs is dated November 30, 2015, except for the FPAA for the taxable year ending December 31, 2009, which is dated December 21, 2015. Copies of the FPAA for each of the aforementioned taxable years are appended hereto as Exhibits B, C, D, E and F, respectively. Because the employer identification number for the Partnership is contained in Exhibits B through F, the Exhibits are being filed under seal pursuant to RCFC 9(m)(2)(D) and (F), and are the subject of an accompanying Motion to Seal.

14.     On September 30, 2015, at the direction of the Appeals Office of the Internal Revenue Service, Houston, Texas, the amount of $44,245,601 was deposited electronically with the Internal Revenue Service. Additionally, on February 25, 2016, at the direction of the Appeals Office of the Internal Revenue Service, Houston, Texas, the amount of $78,790,005 was deposited electronically with the Internal Revenue Service. Together, such deposits include the amount that Complainant's tax liability would be increased if the treatment of partnership items on the Complainant's returns were made consistent with the treatment of partnership items on the Partnership's returns, as adjusted by the FPAAs.

15.     The defendant is the United States of America.

16.     This Court has jurisdiction under 28 U.S.C. § 1508 and 26 U.S.C. § 6226.

3

## **Facts Supporting Readjustment of Partnership Items**

17.     The following facts support Complainant's petition for readjustment of

partnership items:

    a.  The Partnership received gross receipts from the sale of advertising to third-

       parties for advertisements in "Yellow Pages" telephone directories published

       by the Partnership (the "directories").

    b.  The Partnership distributed the directories to residents and businesses at no

       charge.

    c.  The directories were in tangible, printed form.

    d.  The Partnership designed and printed the directories in the United States.

    e.  The Partnership developed and created the directories (including designing the

       content and layout of the advertisements), paginated the directories, created

       and printed proof pages, and exercised quality control over the entire

       production process.

    f.  The Partnership printed, bound, and shrink-wrapped the directories using the

       services of contract printers.

    g.  The Partnership provided contract printers with the design, layout, content,

       and listings for the directories, which consisted of paper positives, film

       positives, film negatives, and electronic data storage.

    h.  The Partnership purchased from paper suppliers the paper on which it printed

       the directories.

    i.  The Partnership's labor and overhead costs, exclusive of the costs paid to

       contract printers for printing and binding, was greater than twenty-percent of

       its cost of goods sold.

4

j.  During the printing process, the Partnership owned the directories, including legal title to the paper, and owned the design, layout, and all other intellectual property rights associated with the directories.

k.  Title to the paper and ownership of the intellectual property associated with the directories (including paper positive, film positives, film negatives, and electronic data storage) never passed from the Partnership to contract printers.

l.  No sales tax was imposed on the contract printers with respect to the directories.

m.  The Partnership controlled the development of the content, design, and layout of the directories.

n.  The Partnership controlled the creation of the print media (the "instructions" to contract printers for printing the directories).

o.  The Partnership determined all specifications for the printing process, including the grade, color, and quality of the paper used.

p.  Contract printers printed the directories according to the specifications and instructions provided by the Partnership.

q.  The Partnership had the right to inspect the directories during the printing process, and it performed quality review of the directories as they were being printed.

r.  The Partnership was primarily responsible for the production schedule, and if a contract printer could not meet the production schedule, the Partnership sometimes approved the use of overtime.

s.  The Partnership bore all risk for fluctuations in the cost of paper.

5

t.  The Partnership bore all risk for fluctuations in the cost of all other manufacturing materials and supplies, including glue, ink, shrink wrap, and natural gas.

u.  The Partnership was an additional insured under contract printers' casualty insurance policies with respect to the directories.

v.  Contract printers' risk of loss consisted primarily of any labor inefficiency and a portion of its overhead costs.

w.  The Partnership's agreements with contract printers were cost-plus arrangements.

x.  The Partnership's agreements with contract printers were priced by separately stating the costs of labor, ink, glue, and shrink wrap.

y.  The Partnership's agreements with contract printers were for printing services.

z.  The printing service fee the Partnership paid to contract printers was not based on the value of the directories or the amount the Partnership received from the sale of advertising.

aa. Contract printers had no right to use, alter, sell, distribute, or dispose of the directories.

bb. The Partnership, and not contract printers, had the right to exploit the directories and the intellectual property associated with them.

cc. The Partnership was responsible for all taxes assessed on the directories.

dd. The Partnership had the benefits and burdens of ownership of the directories throughout the period of their manufacture and production.

DCACTIVE-35299614.1

**Errors Committed by the Commissioner in the FPAAs**

18.     The Commissioner made the following erroneous and illegal determinations with respect to the FPAA for the taxable year ending December 31, 2005:

     a.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2005, the Partnership improperly designated $1,122,369,674 as qualified production activities income for purposes of Code Section 199.

     b.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2005, the Partnership has not established that qualified production property was manufactured, produced, grown, and/or extracted by the Partnership within the meaning of Code Section 199.

     c.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2005, the Partnership has not established that it meets all of the requirements for determining qualified production activities income under Code Section 199, and that the Partnership has not established that the qualified production activities income passed through to its partners is permissible under any section of the Code.

19.     Accordingly, for the Partnership's taxable year ending December 31, 2005, the Commissioner erroneously and illegally reduced the Partnership's domestic production gross receipts by $2,199,419,258, and erroneously and illegally reduced the Partnership's expenses directly allocable to domestic production gross receipts by $1,077,049,584.

20.     The Commissioner made the following erroneous and illegal determinations with respect to the FPAA for the taxable year ending December 31, 2006:

DCACTIVE-35299614.1

a.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2006, the Partnership improperly designated $1,223,040,223 as qualified production activities income for purposes of Code Section 199.

b.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2006, the Partnership has not established that qualified production property was manufactured, produced, grown, and/or extracted by the Partnership within the meaning of Code Section 199.

c.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2006, the Partnership has not established that it meets all of the requirements for determining qualified production activities income under Code Section 199, and that the Partnership has not established that the qualified production activities income passed through to its partners is permissible under any section of the Code.

21.    Accordingly, for the Partnership's taxable year ending December 31, 2006, the Commissioner erroneously and illegally reduced the Partnership's domestic production gross receipts by $2,172,743,827, and erroneously and illegally reduced the Partnership's expenses directly allocable to domestic production gross receipts by $949,703,604.

22.    The Commissioner made the following erroneous and illegal determinations with respect to the FPAA for the taxable year ending December 31, 2007:

a.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2007, the Partnership improperly designated

8

$1,153,666,254 as qualified production activities income for purposes of Code Section 199.

b.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2007, the Partnership has not established that qualified production property was manufactured, produced, grown, and/or extracted by the Partnership within the meaning of Code Section 199.

c.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2007, the Partnership has not established that it meets all of the requirements for determining qualified production activities income under Code Section 199, and that the Partnership has not established that the qualified production activities income passed through to its partners is permissible under any section of the Code.

23.    Accordingly, for the Partnership's taxable year ending December 31, 2007, the Commissioner erroneously and illegally reduced the Partnership's domestic production gross receipts by $2,067,240,147, and erroneously and illegally reduced the Partnership's expenses directly allocable to domestic production gross receipts by $913,573,893.

24.    The Commissioner made the following erroneous and illegal determinations with respect to the FPAA for the taxable year ending December 31, 2008:

a.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2008, the Partnership improperly designated $1,039,335,596 as qualified production activities income for purposes of Code Section 199.

9

b.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2008, the Partnership has not established that qualified production property was manufactured, produced, grown, and/or extracted by the Partnership within the meaning of Code Section 199.

c.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2008, the Partnership has not established that it meets all of the requirements for determining qualified production activities income under Code Section 199, and that the Partnership has not established that the qualified production activities income passed through to its partners is permissible under any section of the Code.

25.    Accordingly, for the Partnership's taxable year ending December 31, 2008, the Commissioner erroneously and illegally reduced the Partnership's domestic production gross receipts by $1,864,618,492, and erroneously and illegally reduced the Partnership's expenses directly allocable to domestic production gross receipts by $825,282,896.

26.    The Commissioner made the following erroneous and illegal determinations with respect to the FPAA for the taxable year ending December 31, 2009:

a.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2009, the Partnership improperly designated $941,198,318 as qualified production activities income for purposes of Code Section 199.

b.  The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2009, the Partnership has not established that

10

qualified production property was manufactured, produced, grown, and/or extracted by the Partnership within the meaning of Code Section 199.

c. The Commissioner erroneously and illegally determined that, for the taxable year ended December 31, 2009, the Partnership has not established that it meets all of the requirements for determining qualified production activities income under Code Section 199, and that the Partnership has not established that the qualified production activities income passed through to its partners is permissible under any section of the Code.

27. Accordingly, for the Partnership's taxable year ending December 31, 2009, the Commissioner erroneously and illegally reduced the Partnership's domestic production gross receipts by $1,547,180,862, and erroneously and illegally reduced the Partnership's expenses directly allocable to domestic production gross receipts by $605,982,544.

**Prayer for Relief**

WHEREFORE, Complainant prays for this Court to: (1) redetermine the adjustments proposed by the Commissioner in the FPAAs (Exhibits B, C, D, E and F attached hereto); (2) determine that no adjustments should be made to the partnership items reported on the Partnership's Federal tax returns for the taxable years ending December 31, 2005, December 31, 2006, December 31, 2007, December 31, 2008, and December 31, 2009; and (3) grant Complainant such other further relief to which it may be entitled.

11

Dated: February 26, 2016

Respectfully submitted,

Dwight N. Mersereau
(Attorney of Record)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Tel (202) 624-2856
Fax (202) 628-5116
dmersereau@crowell.com

Attorney for Complainant

Of Counsel:   David B. Blair
Robert L. Willmore
David J. Fischer
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Tel (202) 624-2500
Fax (202) 628-5116
dblair@crowell.com
rwillmore@crowell.com
dfischer@crowell.com

12